T.C. Memo. 1998-167


UNITED STATES TAX COURT


ESTATE OF PAULINE WELCH, DECEASED, NEWTON G. WELCH, JR. AND LOIS
WELCH MCGOWAN, CO-EXECUTORS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27513-96.                      Filed May 6, 1998.


James David Leckrone, for petitioner.

William W. Kiessling, for respondent.


MEMORANDUM OPINION

LARO, Judge:  The Estate of Pauline Welch (the estate) petitioned the Court to redetermine respondent's determination of a deficiency in the amount of $59,987 in its Federal estate tax. Following concessions by both parties, the remaining issue is whether the estate is entitled to discount the value of stock for built-in capital gains tax liability.  Unless otherwise stated,

section references are to the Internal Revenue Code in effect as of the date of the decedent's death. Rule references are to the Tax Court Rules of Practice and Procedure. The term "coexecutors" refers to the estate's coexecutors, Newton G. Welch, Jr. (Newton) and Lois Welch McGowan.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. When the petition was filed, the coexecutors resided in Nashville, Tennessee.

Pauline Welch (decedent) died on March 18, 1993. At the time of her death, decedent was a minority shareholder in two closely held corporations, Electric Services, Inc. (ESI) and Industrial Sales Co., Inc. (ISC). On the date of decedent's death, ESI had 570 shares issued and outstanding (110 voting common shares/460 nonvoting common shares) of which decedent owned 259 nonvoting common shares; ISC had 836 shares issued and outstanding (150 voting common shares/686 nonvoting common shares) of which decedent owned 259 nonvoting common shares. The coexecutors, decedent's son and daughter, equally inherited decedent's property, including the common nonvoting shares of ESI and ISC.

The remaining shares of both corporations, voting and nonvoting common, were held in a trust established under the will

of Newton G. Welch, decedent's deceased husband.  Pursuant to his will, upon decedent's death, the coexecutors each received one half of ESI's and ISC's voting common shares held in trust (i.e., one-half of 110 and 150 shares, respectively), and one-half of ESI's and ISC's nonvoting common shares held in trust (i.e., one-half of 197 and 423, respectively).[1]

The estate tax valuation was done on a net asset valuation method.  Employed by the estate, Mercer Capital Management, Inc. (Mercer) valued ESI and ISC at $670,000 and $1,809,000, respectively, as of the date of decedent's death.[2]  In arriving at these values, Mercer did not include the following real property owned by each corporation:  ESI owned real property located at 213-215 5th Avenue South and 301-307 5th Avenue South, Nashville, Tennessee; and ISC owned real property located at 305 5th Avenue South and 302 6th Avenue South, Nashville, Tennessee. Mercer excluded these properties from its calculations because it believed that the properties had been targeted for potential sale to the City of Nashville.  Further, Mercer did not apply a

---

[1]  The record does not disclose the reason for the disparity between the amount of shares issued and outstanding by each corporation and the total identified shares (ESI having 570 shares issued and outstanding, 566 owned by decedent and held in trust; ISC having 836 shares issued and outstanding, 832 owned by decedent and held in trust).

[2]  Mercer did not consider either ESI or ISC to be in liquidation in valuing their respective stock.  Neither ESI nor ISC was liquidated, and both corporations remain in existence and continue to operate to date.

discount to reflect the corporations' built-in capital gains tax liability.

In determining the value of decedent's shares of ESI and ISC on the estate tax return, the estate combined the Mercer valuation of the corporations' value with estimates of the value of the real property owned by both corporations, and then applied a 34-percent discount for built-in capital gains on the real property and a 50-percent discount for decedent's minority interest.[3]  The estate's computation is as follows:

|  | ESI | ISC |
|---|---|---|
| Mercer value | $670,000 | $1,809,000 |
| Real estate value | 750,000 | 500,000 |
| total value | 1,420,000 | 2,309,000 |
| Less:  discount for capital gains on real estate (34%) | 255,000 | 170,000 |
| Less:  50% discount for minority interest | 582,500 | 1,069,500 |
| discounted value | 582,500 | 1,069,500 |
| Number of shares outstanding | 570 | 836 |
| Per share value | 1,020.84 | 1,276.02 |

Number of shares owned

---

[3]  As for the capital gains discount, the estate did not deduct the adjusted basis of the properties owned by ESI or ISC. The capital gain rate of 34 percent was applied to the estimated real estate values of the respective properties.  The parties agree that the estate should have deducted the adjusted basis from the estimated real estate values.  Our holding makes this computational adjustment unnecessary.

|                                   |            |            |
|-----------------------------------|------------|------------|
| by decedent                       | x 259      | x 259      |

| Value of decedent's shares per estate tax return (Form 706) | 264,398 | 330,491 |
|---|---|---|

On December 22, 1993, the coexecutors filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, electing the date of death as the valuation date. The reported value of the ESI and ISC stock is $264,398 and $330,491, respectively, for a per share value of $1,020.84 and $1,276.03, respectively.

On March 4, 1994, Newton acquired all of the voting and nonvoting shares of both ESI and ISC which he did not already own from Lanny B. McGowan, his brother-in-law, and Lois Welch McGowan (collectively the McGowans) for $2,100,000. At the time of the transaction, Newton and the McGowans each owned 50 percent of ESI's and ISC's voting and nonvoting shares. The purchase price for the nonvoting shares of ESI and ISC was $1,021 and $1,276 per share, respectively, the approximate per share value identified on the estate's tax return. The remainder of the purchase price was allocated equally between ESI's and ISC's voting stock. Newton, as the buyer in the stock purchase agreement, covenanted that ESI and ISC would purchase real property to relocate the businesses of ESI and ISC once possession of their respective properties was lost to the Metropolitan Government of Nashville

and Davidson County due to condemnation proceedings. The provision in the aforementioned agreement reads as follows:

> 13.01 Replacement Property. Buyer, [ISC and ESI] represent[s] and warrant[s] to Sellers that one or more of said entities plan to purchase real property to relocate the business of [ISC and ESI] once possession of said property is lost to the Metropolitan Government of Nashville and Davidson County, Tennessee due to condemnation proceedings. Buyer, [ISC and ESI] acknowledges that Sellers are relying upon the purchase of said replacement property in order to secure the [$350,000] Promissory Note constituting part of the deferred payment to Sellers.

On May 31, 1994, ESI and the Metropolitan Development and Housing Authority (Housing Authority) entered into a contract of sale of real estate for the properties located at 213-215 5th Avenue South and 301-307 5th Avenue South for $775,000. Also on May 31, 1994, ISC and the Housing Authority entered into a similar contract for the sale of properties located at 305 5th Avenue South and 302 6th Avenue South for $550,000.

ESI and ISC each made elections on their 1994 U.S. Corporation Income Tax Return, Form 1120, not to recognize gain realized from the compulsory or involuntary conversion of property under section 1033(a)(2). On its 1994 return, ESI elected not to recognize $701,161 in realized gain resulting from a June 20, 1994, condemnation of its building and land. On its 1994 return, ISC also elected not to recognize $465,250 in realized gain resulting from a June 20, 1994, condemnation of its building and land. In doing so, both corporations stated that

they were planning to purchase replacement property within the replacement period.

ESI's 1994 tax return shows a net operating loss (NOL) carryover generated for 1993 in the amount of $120,990: $87,443 of the carryover was utilized in 1990[4]; leaving $33,547 available for carryover to 1994.  The $33,547 NOL was used in 1994 to offset taxable income of $19,465.  ESI's 1995 tax return shows an available NOL carryover of $14,217, used to offset taxable income of $21,587.  After application of the NOL, ESI's 1994 and 1995 taxable income was zero and $7,370, respectively.  ISC's 1994 and 1995 tax returns show no NOL carryover, $195,462 and $21,182 in taxable income, respectively, and $59,480 and $3,177 in total tax due, respectively.

On September 27, 1996, respondent issued a notice of deficiency which determined, among other things, that the fair market value of decedent's shares in ESI and ISC was $328,294 and $365,419, respectively, rather than the $264,398 and $330,491 shown on the estate tax return.  The primary difference between respondent's determined value and the estate's returned value stems from respondent's disallowance of the built-in capital gains discount.[5]

---

[4]  This data indicates that ESI either had losses or broke even in 1992 and 1993.

[5]  Respondent's determined value also reflects an increase
(continued...)

## Discussion

For Federal estate tax purposes, property includable in the gross estate is generally included at its fair market value on the date of decedent's death.  Secs. 2031(a) and 2032(a); sec. 20.2031-1(b), Estate Tax Regs.  Fair market value is defined as the price that a willing buyer would pay a willing seller, both persons having reasonable knowledge of all relevant facts and neither person being under a compulsion to buy or to sell. Sec. 20.2031-1(b), Estate Tax Regs.; see also United States v. Cartwright, 411 U.S. 546, 551 (1973); Mandelbaum v. Commissioner, T.C. Memo. 1995-255, affd. without published opinion 91 F.3d 124 (3d Cir. 1996).  The willing buyer and the willing seller are hypothetical persons, instead of specific individuals and entities, and the characteristics of these imaginary persons are not necessarily the same as the personal characteristics of the actual seller or a particular buyer.  Estate of Bright v. United States, 658 F.2d 999, 1005-1006 (5th Cir. 1981).

In determining the value of unlisted stocks, actual arm's-length sales of such stock in the normal course of business within a reasonable time before or after the valuation date are ordinarily the best criteria of market value.  In the absence of

---

[5](...continued)
in the value of ESI's and ISC's real property from the estate's reported value of $750,000 and $500,000, respectively, to $775,000 and $550,000, respectively.

arm's-length sales, the value of closely held stock must be determined indirectly by weighing the corporation's net worth, prospective earning power, dividend-paying capacity, and other relevant factors.  Sec. 2031(b); Estate of Andrews v. Commissioner, 79 T.C. 938, 940 (1982).  Fair market value is a factual determination for which the trier of fact must weigh all relevant evidence and draw appropriate inferences and conclusions.  Commissioner v. Scottish Am. Inv. Co., 323 U.S. 119, 123-125 (1944).

The parties agree that the fair market value of decedent's interest in ESI and ISC as of the applicable valuation date, absent a discount for built-in capital gains, is $328,294 and $365,419, respectively.[6]  The estate argues that a willing seller and a willing buyer of the corporate stock would have discounted the value of ESI's and ISC's stock to reflect the income tax liability due upon sale of the condemned properties.  In support thereof, the estate contends:  At the time of decedent's death, the real property owned by ESI and ISC was under threat of condemnation by the Housing Authority; that the real property was in fact sold to the Housing Authority; and that a portion of the nonvoting common stock owned by the decedent at her death was

---

[6]  These figures reflect respondent's allowance of the 50 percent minority discount and the parties' agreement that the fair market value of the real property formerly owned by ESI and ISC, absent any discount, was $775,000 and $550,000, respectively.

sold on March 4, 1994, at a per share price equal to the per share price shown on the estate's Federal estate tax return.  As to the March 4, 1994, stock sale, the estate is, in essence, arguing that the sale is indicative of what a willing buyer would have paid for the stock on the valuation date given the income tax liability inherent in the aforementioned property.

Respondent makes several arguments for disallowing a built-in capital gains discount.  First, respondent argues that the estate has not established that a liquidation of the corporations or the sale of the corporations' assets was likely to occur. Among other things, respondent contends that the estate has failed to show that the condemnation of the subject properties was foreseeable on the valuation date, and that the evidence establishes that legislative action to condemn the property was not taken until August 12, 1993, more than 5 months after the valuation date.  Second, respondent argues that the discount is not warranted where only the real estate, and not the corporations, was subject to condemnation.  Third, respondent argues that the discount is not warranted where both corporations could avoid, and did indeed avoid, the recognition of gain under section 1033.

As previously stated, ordinarily a sale within a reasonable time before or after the valuation date is the best criteria of

market value.  See Estate of Scanlan v. Commissioner, T.C. Memo. 1996-331, affd. without published opinion 116 F.3d 1476 (5th Cir. 1997).  However, in this case, we do not assign any weight to the March 4, 1994, stock sale which included the sale of nonvoting common shares in ESI and ISC.  The sale was between related parties, the coexecutors (decedent's son and daughter).[7]  Moreover, the coexecutors appear to have determined the sales price of the stock solely by referencing its fair market value as reported on decedent's Federal estate tax return, even though the sale occurred approximately 12 months after decedent's death.  We therefore focus our attention on the issue of whether the value of decedent's interest in ESI and ISC includes a discount for built-in capital gains tax liability. The estate must prove error in respondent's determination of value as set forth in respondent's notice of deficiency.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

This Court has repeatedly rejected reductions in value of closely held stock to reflect built-in capital gains tax liability where the evidence fails to establish that a liquidation of the corporation or sale of the corporation's assets is likely to occur.  See Ward v. Commissioner, 87 T.C. 78, 103-104 (1986); Estate of Andrews v. Commissioner, supra at 942;

---

[7]  We also note that Lanny B. McGowan, Lois Welch McGowan's husband, was and remains an officer of ISC.

Estate of Cruikshank v. Commissioner, 9 T.C. 162, 165 (1947);

Estate of Thalheimer v. Commissioner, T.C. Memo. 1974-203, affd.

on this issue and remanded without published opinion 532 F.2d 751

(4th Cir. 1976). Recently, in Eisenberg v. Commissioner, T.C.

Memo. 1997-483, the Court stated:

> taxpayers may not obtain a valuation discount for
> estate and gift tax purposes based on an event that may
> not transpire. Hence, "When liquidation is only
> speculative, the valuation of assets should not take
> these costs into account because it is unlikely they
> will ever be incurred." [Estate of Andrews v.
> Commissioner, supra at 942; emphasis added.]

> In sum, the primary reason for disallowing a
> discount for capital gain taxes in this situation is
> that the tax liability itself is deemed to be
> speculative. [In prior cases] * * * there was a
> failure to show the requisite likelihood that the
> beneficiaries would liquidate the corporation or sell
> the underlying assets and incur the tax and other
> expenses. Further, there was no showing that a
> hypothetical willing buyer would desire to purchase the
> stock with the view toward liquidating the corporation
> or selling the assets, such that the potential tax
> liability would be of material and significant concern.

We find that in this case the potential for capital gains

tax recognition was too speculative to warrant application of the

capital gains discount. As suggested in Eisenberg v.

Commissioner, supra, and other cases cited above, the estate must

show the requisite likelihood that the corporation would sell the

assets and incur the tax. Assuming that the condemnation of the

subject properties was foreseeable as of the valuation date[8], see Ithaca Trust Co. v. United States, 279 U.S. 151 (1929)(subsequent events are not considered in determining fair market value, except to the extent that they were reasonably foreseeable at the date of valuation); Estate of Scanlan v. Commissioner, supra, and consequently there was the requisite likelihood that the corporations would sell the properties, the estate has failed to show that it was likely that either of the corporations would pay built-in capital gains tax upon sale.

As a general rule, gain realized from the sale or other disposition of property must be recognized. See sec. 1001(c). Section 1033 provides an exception to this general rule by allowing gain realized from certain involuntary conversions to be deferred. Realized gain can be deferred in its entirety under section 1033 if: (1) nonrecognition treatment is elected; (2) qualified replacement property is purchased within the time limits specified; and (3) the cost of the qualified replacement property equals or exceeds the amount realized on the conversion. Sec. 1033(a)(2)(A). Among other things, an involuntary

---

[8] The only evidence submitted which tends to show that the estate was aware of potential condemnation of the real property on the valuation date, and not thereafter, is a magazine article entitled Nashville Neighborhoods Downtown Turning Renderings into Reality, published in the Aug. 1992 issue of Nashville Business and Lifestyles. The article discusses revitalization of the downtown Nashville area, and the proposal appears to encompass properties owned by ESI and ISC.

conversion results when property is condemned by the government. Sec. 1033(a). The aforementioned exception to the general rule that gain is recognized casts doubt on whether or when a taxpayer would have to recognize gain as a result of an involuntary conversion.[9]

A section 1033 election was available to the estate on the applicable valuation date. The estate presented no evidence that on or near the valuation date either corporation considered recognizing the built-in capital gain and foregoing the election under section 1033. Additionally, ESI and ISC manifested their intent to find replacement properties by filing the section 1033 elections with each corporation's 1994 Federal income tax returns. The principal shareholder, and now sole shareholder, Newton covenanted to find replacement property when he acquired the shares of the other shareholders. Given these facts, no reduction in value should be allowed for the corporations' built-in capital gains, and we therefore uphold respondent's determination on this issue.

---

[9] We also note that a corporation's recognition of built-in capital gains is far from certain, even in the absence of special nonrecognition provisions such as sec. 1033. A corporation's NOL carrybacks and carryovers can limit or extinguish any potential recognition of built-in capital gain for up to 19 years. See sec. 172. For example, in 1994, ESI could have offset its $701,162 capital gain by the $33,547 NOL carryover (if the gain had been recognized).

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.